ELECTRIC STORAGE BATTERY CO. v. GOULD STORAGE BATTERY CO.

(Circuit Court, S. D. New York. October 11, 1906.)

PATENTS—INFRINGEMENT—ELECTRIC CURRENT REGULATOR.

The Mailloux patent, No. 430,868, for a regulator for electric currents, was not anticipated and discloses invention in the placing of the regulating coil in the working circuit, but in view of the prior art it is limited to such feature, and is not infringed by the device of the Hubbard patent, No. 651,664, in which such coil is placed in the generating circuit.

In Equity. On final hearing.

Augustus B. Stoughton (Edmund Wetmore, of counsel), for complainant.

Kenyon & Kenyon (Wm. Houston Kenyon and Richard Eyre, of counsel), for defendant.

HAZEL, District Judge. Complainant is the owner of letters patent No. 430,868, granted to Cyprien O. Mailloux, inventor, on June 24, 1890, for automatically regulating electric currents. The invention is principally applicable to circuits which are subject to marked changes of load or sudden and violent fluctuations of the current energy, as in electric railway circuits, where the variations of load are very rapid. The patent has 14 claims. At the hearing infringement of claims 2 and 6 was charged, which claims read as follows:

"(2) The combination, with a dynamo machine and the working circuit supplied thereby, of a compensating storage battery, a supplemental reinforcing generator in the battery connection, and means for varying the power of such generator in accordance with fluctuations of current on the working circuit."

"(6) The combination, with a dynamo machine and circuit supplied therefrom, of a compensating storage battery fed from such dynamo and a supplemental dynamo whose electro-motive force re-enforces the battery on discharge, and whose field is variable according to the fluctuations of electrical energy on the supplied circuit."

The essence of claim 2 is for a regulation "in accordance with fluctuations of current on the working circuit," and claim 6 epitomizes a supplemental dynamo machine "whose field is variable according to the fluctuations of electrical energy in the supplied circuit." The defenses interposed are want of novelty, noninfringement, and that the regulating system in suit is inoperative, except when employed with generators having a so-called "drooping" characteristic. The various elements comprising the claims are a main dynamo machine, the working circuit, a compensating secondary battery, a supplemental dynamo machine or generator, smaller than the main generator, and technically called a "booster," which is placed in the battery circuit, a regulating coil, which controls the power and distributes or varies it in accordance with the fluctuations on the working circuit.

It will perhaps conduce to a better understanding of the claims in controversy to outline at the outset the main characteristics of the apparatus to which the improvement pertains. The employment of supplemental generators to produce a compensation of the battery as an adjunct to storage batteries was known at the date of the invention in

suit, although their successful use in the United States for electric rail-systems is limited to about the past 10 years. Nor was there novelty in the use of intermediate dynamos in series with a storage battery to accumulate and re-enforce the electro-motive force from the main generator in order to maintain constant the voltage of the battery circuit. The novelty of complainant's invention is the electrical connection between the booster and the working circuit, whereby the fluctuations in that circuit are transmitted to the re-enforcing generator or booster, and through it to compel the battery to discharge in response to the load demand. The specification says:

"This I propose to accomplish by means of an electric coil, which I term the 'regulating or controlling coil,' or by other electro-responsive device made to control the action of the dynamo or other supplemental generator in any of the ways known to electricians. A convenient way is to make such regulating coil the field coil for the dynamo, thus varying the field of the machine automatically. It might be made to shift the brushes of the dynamo by any means, so as to vary the electro-motive force to operate or produce a controlling action in other ways and directly or indirectly through other devices, the coil in any case being electrically connected into the main circuit, so that fluctuations or changes of electrical condition of such circuit would be felt in the coil."

It will be observed that the distinctive characteristic of the invention is the manner of positioning or connecting the coil. The proofs are open to the inference that it was important and necessary that the regulating coil to produce the desired action on the booster should be connected into the main or working circuit, which terms are interchangeably used by the expert witness for complainant. Indeed, the fluctuations on the working circuit would not have affected the booster in the manner stated in the claims unless the exciting coil were so connected. The significance of this point is apparent when it is understood that in the defendant's system the regulating coil is connected in that branch of the generator circuit between the main dynamo and the battery; a patentable departure in that respect being claimed by the defendant.

The evidence shows that in the systems of the prior art, because of the rapid fluctuations of the energy on the working circuit, the efficiency and durability of the machinery was considerably impaired, and that machines of greater capacity were required. It is shown that there are generators or dynamo machines common in the art constructed to either raise, lower, or maintain constant the voltage. The obstacle to complete success of such prior systems as stated in the specification was owing to the fact that the electro-motive force of the battery discharge was considerably lower than that of the charge, hence the compensating effect of the battery was inefficient, and from an economic standpoint unsatisfactory. Hence remedial means were demanded to effect the regularity and equilibrium in the distribution of current energy to overcome the difficulties experienced. In the system described in the specification of the Mailloux patent the voltage of the main generator at all times remains constant, and the compensating circuit supplied a higher voltage of the discharge than that of the charge. The voltage of storage batteries, which depends upon the number of cells used in their electro-motive force, is increased upon being charged and diminished by the outflow or discharge. The load on the generator gradually

changes or varies according to the number of lights or cars on the translating device, and, though such variations probably are slight, they are nevertheless exceedingly rapid. In the patent in suit the battery cells are arranged in series in the circuit leading to the armature in the main generator, and are charged by it when the supplemental generator is inert. As soon as the latter is engaged in generating electro-motive force, the charging of the cells by the main generator is diminished, and thereupon the electro-motive force of the supplemental generator antagonizes that of the main generator. In this manner a harmonious electrical activity is reached; the general result being to enable the storage battery to relieve the generator when the load on the translating device is heavy. It should also be understood that in the main generator, which preferably charges the storage battery and is usually driven at uniform speed, the electro-motive force is maintained practically constant; its voltage being ascertained by the current in the main circuit.

The asserted difficulties of the prior art are claimed to have been removed by the automatic regulation due to the coil connected into the main or working circuit between the booster and such circuit, by which the variations of current in the working circuit are transmitted to the booster, with the result that the supplemental generator controls the electrical discharge of the storage battery. The following is a simplified diagram of the Mailloux patent:

D represents the supplemental generator or booster in the circuit with the batteries; A, the main generator; M, the regulation coil, electrically connected into the main circuit, which controls the booster and responds to the fluctuations of electric conditions on the working circuit, X, Y;

B is the storage battery in a branch connected to the terminals of armature of the main dynamo. Referring to the drawings, Fig. 1, the specification says:

"In the operation of the system both of the armatures, A and D, are rotated at their respective speeds by the application of motive power either from the same or different sources. The number of cells in the series, B, is proportioned in accordance with the potential used, as are also the windings of the armature, D, as well as the speed of the small dynamo, F. The field winding, M, M, must be proportioned with reference to the current beyond which the batteries are to assist in compassing fluctuations."

Assuming the validity of the claims, the first question presented is whether they must be limited in scope to the special means mentioned for the regulation of the compensating action of the storage battery. As already observed, a method of conveying electricity from one point to another, storing it, and utilizing the same in the working circuit when required, was well known at the date of the invention in suit, and the feature of supplementing the battery by an apparatus commonly called a "booster," either to maintain a constant pressure or obtain a varying voltage, is described in the British patent to Perry, No. 55, of 1882. In Telegraphic Journal & Electrical Review, London, of February 24, 1883, it is stated that to obtain a constant difference of potential between the mains a magneto shunt dynamo and a small series dynamo may be combined for the purpose of supplying a constant electro-motive force to that produced by the dynamo or regulating machine. In the British patent to Edison, No. 4,553, of 1881, means are described for maintaining electro-motive force supplied by storage batteries, and a supplemental dynamo in series was used which could be automatically regulated from the main circuit. But as the patents to Edison and Perry do not disclose a main generator, the booster and regulating coil manifestly were not, as in the Mailloux construction, connected with any source of power. The principle of the patent in suit in my opinion was not anticipated by those inventions. The defendant's best references are the patents to Lane Fox and to Leonard. In the Lane Fox patent, No. 254,948, of 1882, is described a compensating storage battery connected in parallel with an intermediate generator of the end cell type. The latter, like the supplemental dynamo of the Mailloux patent, is located in the battery circuit and the automatic regulation of the main circuit is induced or affected by a regulating coil connected across the circuit, which also operates to automatically regulate the supplemental generator. The distinction between the regulating coil of Mailloux and that of Lane Fox simply consists in a difference of location by which, on the one hand, the fluctuations of current in the working circuit compel the regulating coil to perform its function, and, on the other, the voltage changes in the working circuit produce similar results. In both methods the conditions of the working circuit apparently affect the regulation. Complainant contends that the Lane Fox patent belongs to a different type of generator, namely, one which depends upon a so-called "drooping" characteristic at the battery terminals to induce the charging and discharging of the battery. To concisely differentiate the Mailloux and Lane Fox systems,

Mr. Duncan, complainant's expert witness, on cross-examination, testified:

"X–Q 167. The substantial differences between the Lane Fox system and that of Mailloux shown in the patent are (1) that Lane Fox employs a battery, instead of a dynamo, as the auxiliary source of electro-motive force; and (2) that he regulates the voltage of this auxiliary source by voltage fluctuations of the circuit, instead of by current changes of the working circuit? Please state whether this is correct, and do so without entering into any discussion on the relative merits or arrangements of the two systems. A. I think your statement is correct."

That the supplemental dynamo of Mailloux and the cell type generators were equivalents in the art is not denied. Indeed, it is thought that the specification fairly includes different types of generators. Moreover, it cannot be disputed successfully that the Lane Fox system could be used in connection with different types of generators; i. e., generators having rising or drooping characteristic. In these circumstances the point that the voltage regulation of Lane Fox could only be employed in a main generator, in which the voltage was lowered as the generated current increased, is not sustained by the evidence. The main difference between the Mailloux system and that of Lane Fox, as already pointed out, would seem to be the electrical connection of the regulation coil into the working circuit, instead of subjecting it to the voltage changes of such circuit. There is no such departure from the Lane Fox patent by the patent in suit, despite its claimed advantages, to warrant a construction of the involved claims to include the specific action of its regulating coil.

In the patent to Leonard, No. 435,700, dated September 2, 1890, an automatic regulation of the booster in the compensating circuit is disclosed, and a fair preponderance of the evidence indicates that the battery is regulated by the coil in the battery circuit in accordance with the variations of load upon the main or working circuit. The current in the regulation coil of the Leonard system is not, as in the system of complainant, directly affected by the fluctuations and changes in the working circuit, but such currents are primarily controlled by the battery circuit. This difference in operation, however, is not thought to be of primary importance, inasmuch as the electric conditions of the working circuit and the fluctuations therein cause corresponding changes in the battery circuit which thereupon acts upon the regulating coil. Complainant contends that in the Leonard patent the regulating coil is not in the circuit supplied by the main generator, but is in the battery connection; and it is argued, quoting from complainant's brief:

"This regulation coil carries the battery current, and, unless there is current to and from the battery, this coil has no effect, and whatever effect it has is due to the battery current, so that the battery must first charge or discharge before the regulating coil influences the booster. In this Leonard system the battery must first charge or discharge, and this causes the regulating coil to operate. Since the regulating coil does not compel the battery to charge or discharge, but merely operates after the battery commences to charge or discharge, there must in the Leonard system be some cause other than the regulating coil for causing the battery to charge or discharge, and this cause is the characteristic of the main generator, by which characteristic the voltage of the main generator drops upon increase of load, thus changing the voltage at the terminals of the battery connection, thereby causing the battery to discharge."

Defendant's position in relation to the Leonard system, as testified to by Mr. Wagner, is as follows:

"The Leonard regulating coil thus carries and is directly affected by the current in the battery branch, while the Mailloux coil carries and is directly affected by the combined current from the battery branch and the main dynamo branch. The Mailloux coil is thus directly affected by the whole current in the working circuit, and the Leonard coil is indirectly affected by the whole current of the working circuit or directly affected by only a part of the current delivered to the working circuit. The Leonard system with the shunt field coil, S, in addition to the series coil, is substantially the same as the system of Mailloux Figs. 2, 5, and 6, excepting as to the location of the series field coil, U, before noted. The compensating effect of the battery and reinforcing generator of the Leonard system would be the same as that of the Mailloux system with a proper design and adjustment of coils."

I incline to the belief that the defendant's position is correct.

The prior art does not produce a booster directly controlled by change of the electro-motive force in the circuit supplied by the main generator, and it is thought that the Mailloux system presented some patentable invention, although it is earnestly insisted that it needed only the skill of the engineer to put the regulation coil directly into the main circuit, especially as Fox in his prior patent suggested such an arrangement. The substantial novelty of the Mailloux invention lies in his selection of circuits for the regulating coil. His improvement must, therefore, be limited to electrically connecting the regulating means into the working circuit, to the end that they are directly and completely influenced by the fluctuations of electrical energy on such circuit.

Evidence is found in the record to show that the supplemental generator of the patent was inoperative with a main generator having a so-called "flat" characteristic, the claim being that the generator of the patentee was of the drooping characteristic type. Upon this point the Peekskill experiment, which from the discrepant statements of the witnesses called to support the respective propositions, is not persuasively illuminative. But this experiment does not require extended attention. In the defendant's device, which is constructed under the Hubbard patent, No. 651,664, dated June 12, 1900, the regulating coil is in the generator circuit, between the generator and the battery, and is affected by that circuit, and not by the fluctuations or variations of the working circuit. If, however, we assume that it is affected by the fluctuations of such circuit, such effect is partial, indirect, and merely incidental to the operations of the system, without materially contributing to the functional result. It is thought a different principle results from the electrical connection of the regulation coil in the generator circuit. Although complainant's expert does not agree with the experts of defendant in the proposition that the working and generator circuits, as applied to apparatuses of the kind under consideration, are functionally different, yet I believe it has been proven that the electrical connections in such circuits to regulate a supplemental generator produce a different kind of regulation and distinct results. Evidence has been given to show that the working circuit is that part of the system which leads from the junction of the generator and battery circuits out to the translating devices, while in the generator circuit the electric energy is precisely that of the main generator. The characteristic difference

in such electrical forces are well understood in the art, and it is not thought that the patentee by the use of the words "main circuit" intended to include in its meaning the generator circuit.

To point out in detail the differences between defendant's construction and the Mailloux patent and mode of construction I quote from the defendant's brief and attach hereto a simplified diagram showing the system of the defendant:

"The circuit, X, Y, is the main or working circuit in which the translating devices are connected. A is the main generator, B the battery, and G the armature of the booster. The field winding of the booster is shown at F, being in a branch circuit colored black. The current in this field coil of the booster controls the voltage of the booster armature and thereby the battery current. In turn the current in this coil is regulated in accordance with the relation between the voltage across the system and that generated by a special regulating dynamo known as a counter electro-motive force machine. This machine voltage is in turn regulated by, and only by, the fluctuations of current on the main generator, A, this being effected because the field winding of the counter machine shown at R is connected in the generator circuit. * * * The primary regulation is effected by the coil, R, in the generator circuit. When the load on the generator is at is desired average this coil, R, will have such a current that the counter machine voltage will exactly equal that across the generator and therefore no current will flow through the booster field, F. When, from any cause whatever, the generator current rises above the desired average, this increase of current in the coil, R, will cause the voltage of the counter machine to rise above that of the main generator, and so compel current in one direction to traverse the coil, F. When, from any cause whatever, the current on the main generator falls, this decrease, falling upon the coil, R, decreases the voltage of the counter machine to a point below that of the main generator and therefore current in the other direction traverses the booster field, F."

My conclusion is that the claims cannot be given a scope to embrace a booster automatically regulated by a coil in the generator circuit when such regulation occurs by the conditions of such circuit. It follows

that the defendant's system cannot be included in the scope of the claims in suit, and its means of regulation do not correspond to those of complainant, nor do they produce the same result. This view makes it unnecessary to discuss the points arising from the claim that the Mailloux patent is a paper patent, and that, if practicable at all, it was owing to the subsequent patent to Entz, No. 625,098, dated May 16, 1889..

The bill is dismissed, with costs.